Sergio DeGIOIA, Plaintiff-Appellee,

v.

UNITED STATES LINES COMPANY,

Defendant and Third-Party Plaintiff-Appellant,

v.

AMERICAN STEVEDORES, INC., and Imparato Stevedoring Corp., Third-Party Defendants-Appellees.

No. 288, Docket 27297.

United States Court of Appeals
Second Circuit.

Argued April 6, 1962.

Decided June 11, 1962.

---

Robert Klonsky, of DiCostanzo, Klonsky & Sergi, Brooklyn, N. Y. (Charles Kramer, of Kramer & Dillof, New York City, on the brief), for plaintiff-appellee.

Matthew L. Danahar, of Kirlin, Campbell & Keating, New York City (Patrick J. Gilmartin, New York City, on the brief), for United States Lines Co., defendant and third-party plaintiff-appellant.

John L. Quinlan, of Bigham, Englar, Jones & Houston, New York City (George J. Conway and Robert J. DeBoissiere, New York City, on the brief), for third-party defendant-appellee American Stevedores, Inc.

Joseph P. Feury, of Monica & Feury, New York City (Thomas H. Healey, of Monica & Feury, New York City, on the brief), for third-party defendant-appellee Imparato Stevedoring Corp.

Before CLARK and FRIENDLY, Circuit Judges, and ANDERSON, District Judge.

CLARK, Circuit Judge.

Sergio DeGioia, a longshoreman, was injured while unloading the S. S. American Chief at the Brooklyn Army Base. Alleging that his injuries were caused by the negligence of the shipowner and the unseaworthiness of the vessel, he brought an action against the vessel's owner, United States Lines Company. In turn, United States Lines Company impleaded DeGioia's employer, American Stevedores, Inc., and Imparato Stevedoring Corp., a firm responsible for loading the S. S. American Chief at Bayonne, N. J., its prior port of call. In its third-party complaint, United States Lines Company asserted that if it were held liable to plaintiff, it was entitled to indemnification from the stevedoring firms.

Despite initial confusion as to whether the third-party complaint would be submitted to the court or the jury, both actions were tried to the jury, verdicts were returned for DeGioia, and for United States Lines Company in the third-party action, and judgment was entered upon these verdicts. On the appeals of the stevedoring companies, we affirm; on the appeal of United States Lines Company, we reverse for the award of counsel fees and expenses.

■ The evidence was unquestionably sufficient to support the jury's verdict in favor of plaintiff. DeGioia was a member of a gang of longshoremen who were removing covers from tanks set flush to the deck of the S.S. American Chief's lower hold. In the course of this operation he tripped and fell approximately 18 feet to the bottom of one of the tanks, suffering serious injuries. Testimony of several witnesses, supported by photographs, indicated that the floor of the hold was strewn with a tangle of loose wire lashings, shackles, dunnage, and other objects, as well as grease or similar slippery substances, and that DeGioia tripped or slipped on this debris, toppling over the edge of the tank. In these circumstances the jury was warranted in finding that the shipowner was negligent in failing to provide a safe place to work, e. g., Johnson Line v. Maloney, 9 Cir., 243 F.2d 293; Palazzolo v. Pan-Atlantic S.S. Corp., 2 Cir., 211 F.2d 277, affirmed Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, or that the vessel was unseaworthy, e. g., Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941.

■ Similarly, there was extensive evidence to support the jury's determination that the stevedoring firms had breached their warranty of workmanlike performance, and that these actions caused plaintiff's injury. Several witnesses, including plaintiff, the superintendent of cargo operations for the Army at the Brooklyn Army Base, an expert witness, and American Stevedores' pier superintendent—all testified that

the proper and customary practice in cases where unloading operations must be done in a debris-littered area such as the lower hold of the S.S. American Chief is for the longshoremen to cease unloading until the mess is cleaned up and the area rendered a safe place in which to work. Whether a hazard is created by the negligence of the shipowner or otherwise, the stevedoring firm is liable for indemnity if a workmanlike performance would have eliminated the risk of injury. Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413; Calmar S.S. Corp. v. Nacirema Operating Co., 4 Cir., 266 F. 2d 79. And where longshoremen, failing to perform in a workmanlike fashion, initially create the hazard, their employer must indemnify the shipowner, even where the latter has negligently failed to discover the danger. Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., supra, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133. Also there was evidence indicating that Imparato's unworkmanlike performance at least in part created the hazard which led to DeGioia's injury—a wholly foreseeable result of the breach of warranty. Thus there was sufficient evidence to support the jury's determination of joint liability. Cf. Restatement, Contracts § 330 (1932); 2 Restatement, Torts § 449 (1934).

Both American Stevedores and Imparato argue that the trial judge erred in the manner in which he submitted the third-party complaint to the jury. Their contentions, however, are very different. American Stevedores asserts that it was improperly denied trial by jury, while Imparato claims that it was forced improperly to trial to a jury. Each of these contrary claims derives a slight measure of plausibility from the uncertain course followed by the trial judge, but we find no definite prejudice resulting to either party. The judge early determined that he would try the issue of indemnity separately from DeGioia's original claim; and he told the parties that he would accept an advisory verdict on that issue, since a jury trial was not required. So after the jury had found liability to DeGioia by the United States Lines Company the trial of the indemnity issue proceeded before the jury. Only after the verdict against the stevedores was rendered did the court indicate to the jury that the verdict would be considered advisory. Subsequently it was discovered that American Stevedores had endorsed a claim for jury trial on its answer, as provided in F.R. 38(b). The court then reversed its position and accepted the jury's determination as binding.

In his last ruling the judge was quite clearly correct. American Stevedores had never withdrawn its claim for jury trial and was therefore entitled to such trial. F.R. 38(d), 39(a).[1] That is what it got. Its present contention that it was denied jury trial is quite specious. Beyond the purely formal claim it appears to be based on the view that it might have taken some possible action to its benefit had the trial judge not announced his intention to accept the verdict as advisory. But this is in the highest degree specula-

---

1. After making its initial demand, American Stevedores apparently did not explicitly raise the question again. The court, responding to a motion by United States Lines Company, determined that the third-party action would be tried to the jury in an advisory capacity and on a separate charge. Both stevedoring firms objected to this, but the grounds of the objection are unclear. While American Stevedores' failure explicitly to urge its original demand in the subsequent proceedings added to the confusion surrounding the issue of jury trial, it cannot be considered a waiver of this "vital and cherished right." City of Morgantown, W.Va., v. Royal Ins. Co., 337 U.S. 254, 258, 69 S.Ct. 1067, 93 L.Ed. 1347. The principle of waiver by failure to make timely claim, F.R. 38(d), is limited by the explicit provision of F.R. 39(a), that once a demand for jury trial has been properly made it can be waived only by an oral stipulation made in open court and entered in the record, or by written stipulation. Of course we need not decide whether on this record it would have been error for the trial judge to submit the case to the jury in an advisory capacity only, since that is not what occurred.

tive, and no actual prejudice is shown or suggested. No contention of this kind was made at the time to the judge, who submitted the case to the jury just as he would have done had he not expressed the intention to treat it as advisory—an intention expressly based on the desire to avoid a new trial should this court hold a jury trial required. We overrule American Stevedores' contention.

■ Turning now to Imparato's contention, since we have held that American Stevedores had made a valid demand for jury trial under F.R. 38(b), that this demand had not been waived, and that a jury trial was actually had, the sole issue here presented by Imparato is whether it was erroneously denied trial to the court. Had American Stevedores served its answer with the endorsed jury claim on Imparato, the latter would have been bound to accept jury trial on the common issue of liability to indemnify the shipowner. F.R. 38(b); McAndrews v. U. S. Lines Co., D.C.S.D.N.Y., 167 F. Supp. 41; 5 Moore's Federal Practice ¶38.45, p. 344 and n. 2 (2d Ed.1951). Indeed under the circumstances that was the natural and convenient form of trial. But as Imparato had not then entered the case, no such service was made. However, we do not think in the special circumstances of this case that the failure to serve was fatal. There is no doubt that Imparato had adequate notice of American Stevedores' demand and acquiesced therein. This we find constitutes sufficient evidence of a demand to bring the case within the provisions of F.R. 39(a). Imparato was on notice throughout the proceedings that a significant issue in the case was whether or not the third-party complaint would go to the jury. There was extensive discussion of this issue by all the parties with the court, and the court requested submission of memoranda on the question. Indeed, Imparato's counsel specifically objected to the method of trial announced by the court. These actions show an acquiescence in American Stevedores' demand, and indicate that Imparato was not prejudiced by American

Stevedores' failure to serve it with a notice of demand for jury trial. Thus submission of the issues to the jury worked no prejudice to Imparato, and cannot constitute grounds for reversal.

■ American Stevedores maintains that it is under no obligation to indemnify the United States Lines Company. The essence of this claim is that American Stevedores' contract is with the United States Army, not the shipowner; and United States Lines Company is neither a party to nor a third-party beneficiary of the agreement, and thus is not entitled to indemnification from American Stevedores. This claim rests, however, on a misunderstanding of the nature of the stevedore's obligation to indemnify the shipowner for damages paid by the latter to injured longshoremen. It is misleading to consider this literally only an action *ex contractu*. The basis of the stevedore's obligation is its implied warranty of workmanlike service. The obligations which arise from warranty are not limited to the confines of an action on the contract; the zone of responsibility may extend beyond those in direct contractual relationship. E. g., Randy Knitwear, Inc. v. American Cyanamid Co., 11 N.Y.2d 5, 226 N.Y.S.2d 363; Baxter v. Ford Motor Co., 168 Wash. 456, 12 P.2d 409, 15 P.2d 1118, 88 A.L.R. 521; s. c., 179 Wash. 123, 35 P.2d 1090. See also Prosser, The Assault upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099 (1960). This is the meaning, as we see it, of Waterman S. S. Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169, which reversed the holding below, King v. Waterman S. S. Corp., 3 Cir., 272 F.2d 823, denying the indemnity claim because of an absence of contractual relations between the parties.

■ The primary source of the shipowner's right to indemnity, as a practical matter, is his nondelegable duty to provide a seaworthy ship, by virtue of which he may be held vicariously liable for injuries caused by hazards which the longshoremen either created or had the primary responsibility or opportunity

to eliminate or avoid. Waterman S. S. Corp. v. Dugan & McNamara, Inc., supra, 364 U.S. 421, 424–425, 81 S.Ct. 200, 5 L.Ed.2d 169; Paliaga v. Luckenbach S. S. Co., 2 Cir., 301 F.2d 403, 408. The function of the doctrine of unseaworthiness and the corollary doctrine of indemnification is allocation of the losses caused by shipboard injuries to the enterprise, and within the several segments of the enterprise, to the institution or institutions most able to minimize the particular risk involved. See Seas Shipping Co. v. Sieracki, 328 U.S. 85, 94, 66 S.Ct. 872, 90 L.Ed. 1099; Mitchell v. Trawler Racer, Inc., supra, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941; Johnson v. Partrederiet Brovigtank, D.C.S.D.N.Y., 202 F. Supp. 859. Cf. Morris, Enterprise Liability and the Actuarial Process—The Insignificance of Foresight, 70 Yale L.J. 554, 587–593 (1961); Seavey, Speculations as to "Respondeat Superior," Harv. Legal Essays 433, 447 (1934), cited in James & Dickinson, Accident Proneness and Accident Law, 63 Harv.L.Rev. 769, 780 (1950). Thus while the cases speak in the language of contract, it is misleading to cling to the literal implications of that language. The scope of the stevedore's warranty of workmanlike performance is to be measured by the relationship which brings it into being. Since the shipowner here was held liable for injuries the jury found were the foreseeable result of the stevedores' failure to perform in a workmanlike fashion, it may recover indemnification, whether it was strictly a "third-party beneficiary" or not. Waterman S. S. Corp. v. Dugan & McNamara, Inc., supra, 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169.

Of course it still remains true that the stevedore by contractual stipulation may limit his liability for indemnification. See D'Agosta v. Royal Netherlands S. S. Co., 2 Cir., 301 F.2d 105. The limits of the parties' freedom to alter their obligations by contractual terms are as yet uncharted, although there are indications that they are not indefinitely limitless. Cf. Calmar S. S. Corp. v. Nacirema Operating Co., supra,

4 Cir., 266 F.2d 79. So American Stevedores now asserts that United States Lines Company was under a contractual obligation to supply and maintain in safe condition all areas used in stevedoring operations, and that by breaching this agreement it forfeited its right to recover indemnity. There may well be substantial questions (1) whether the contract between American Stevedores and the Army can be read as incorporating within itself this general requirement drawn from the Maritime Safety Code, and (2) whether, even if the contract were read as placing such a burden on the Army, it would affect United States Lines Company. Obviously an affirmative answer would go far toward destroying the shipowner's valuable right to a warranty of workmanlike service. But, so far as the record shows, this issue was nowhere raised or considered below, and we should not attempt to raise or dispose of it here. Other questions raised by the stevedores we have considered and find lacking in merit.

■■■■ A final point is raised by United States Lines Company's appeal because of the trial court's denial of attorneys' fees and expenses to it as part of its recovery over against American Stevedores and Imparato. This was error. Attorneys' fees and reasonable disbursements connected with the defense of the longshoreman's action are as foreseeable elements of the damage caused by the stevedoring firms' breach of warranty as is the plaintiff's actual recovery, and the shipowner is entitled to a reasonable recovery of these sums. Paliaga v. Luckenbach S. S. Co., supra, 2 Cir., 301 F.2d 403; A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., 2 Cir., 256 F.2d 227, certiorari dismissed 358 U.S. 801, 79 S.Ct. 9, 3 L.Ed. 2d 49; Holley v. The Manfred Stansfield, D.C.E.D.Va., 186 F.Supp. 805. The trial court determined that reasonable attorneys' fees amounted to $5,000. This we regard as too low. Pre-trial preparation for the case was extensive, the amount of damages involved was high, and the trial itself lasted 12 days, taking

the time of two attorneys. Taking these factors into consideration we have determined that attorneys' fees should have been set at $10,000. See Columbian Nat. Life Ins. Co. v. Keyes, 8 Cir., 138 F.2d 382, certiorari denied 321 U.S. 765, 64 S.Ct. 521, 88 L.Ed. 1061; Root Refining Co. v. Universal Oil Products Co., 3 Cir., 147 F.2d 259, 261, reversed in part 328 U.S. 575, 66 S.Ct. 1176, 90 L.Ed. 1447. Moreover, the actual total disbursements were $4,656.97; and we see no warrant for reducing that figure in computation of the award. Finally, an allowance should be made of attorneys' fees on this appeal, which we determine to be $750, together with taxable costs.

The judgments below against the stevedores are affirmed. On the appeal of United States Lines Company the judgment is reversed, and the case remanded for award of reasonable attorneys' fees, disbursements, and costs on appeal, in accordance with this opinion.