Salvatore **RAPISARDI**, Plaintiff,

v.

**UNITED FRUIT COMPANY**, Defendant and Third-Party Plaintiff,

v.

**SAM BARBARA & COMPANY** and John W. McGrath Corporation, Third-Party Defendants.

No. 66 Civ. 3108.

United States District Court
S. D. New York.
June 10, 1969.

Alvin J. Apfelberg, New York City, for plaintiff.

Thomas V. Walker, Herbert Lasky, by Raymond Green, New York City, for Sam Barbara & Co.

Schaffner & D'Onofrio, by Peter Monaghan, New York City, for John W. McGrath Corp.

## OPINION

EDELSTEIN, District Judge.

This action arose out of an injury suffered by Salvatore Rapisardi on June 1, 1966, while working on board the S.S. FRABERLANGA. United Fruit Company was the owner of the vessel and third party defendant, Sam Barbara & Company, was the plaintiff's employer. The third party action against John W. McGrath Corp. has been discontinued with prejudice by stipulation of all of the parties. This court has jurisdiction over the matter in controversy under 28 U.S.C. § 1333.

Sam Barbara & Company (Barbara) had been engaged to perform demolition and other work aboard the S.S. FRABERLANGA, which, on June 1, 1966, was moored at Pier 3, New York City. Plaintiff, as an employee of Barbara, boarded the ship in the morning, and, together with a fellow employee, Vincent DeMilta, was assigned by Barbara's foreman, Eddie Collins, to work on demolishing wood partitions in the No. 2 hold on the 'tween deck. Plaintiff and DeMilta began their work at approximately 8:00 a. m.; DeMilta held a steel splitting bar [1] against the partition and plaintiff struck it with a steel head maul.[2] Both the splitting bar and the maul were tools which belonged to Barbara. The tools had been stored aboard the ship by Collins after the previous day's work, and, on the morning in question, were made available to plaintiff and DeMilta by Collins.

Plaintiff worked in the manner described for one and one-half hours until 9:30 a. m., when a metal chip parted from the splitting bar and entered his left eye, as a result of which plaintiff permanently lost all vision in his left eye. This court finds that the impact upon the eye of the metal chip was the competent producing and proximate cause of that loss, and, indeed, causation is conceded by the defendant.

It is well settled that a marine carpenter performing the ship's service is entitled to a seaworthy vessel. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1954); Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); *see also*

---

1. A splitting bar resembles a large chisel.

2. A steel head maul resembles a large hammer made out of metal.

Jackson v. Lykes Bros. Steamship Co., 386 U.S. 731, 734 n. 4, 87 S.Ct. 1419, 18 L.Ed.2d 488 (1967). This warranty of seaworthiness extends to the equipment which is provided to the men working on the ship and the shipowner cannot escape liability on the ground that the equipment in question was brought on board the vessel by his independent contractor. Alaska Steamship Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954), aff'g. per curiam 205 F.2d 478 (9th Cir. 1953); Rogers v. United States Lines, 347 U.S. 984, 74 S.Ct. 849, 98 L. Ed. 1120 (1954), rev'g. per curiam 205 F.2d 57 (3rd Cir. 1953); Massa v. C. A. Venezuelan Navigacion, 298 F.2d 239 (2d Cir. 1962). The metal chip which injured plaintiff's eye having come from the splitting bar furnished by Barbara, this court finds that the S.S. FRABERLANGA was unseaworthy in this respect as to plaintiff Rapisardi. *Cf.* Van Carpals v. The S.S. American Harvester, 297 F.2d 9 (2d Cir. 1961), cert. denied 369 U.S. 865, 82 S.Ct. 1031, 8 L.Ed.2d 84 (1962).[3]

■ Defendant argues that plaintiff was contributorily negligent. The burden of proving contributory negligence rests on the defendant, *Gypsum Carrier, Inc.* v. *Handelsman,* 307 F.2d 525, 528, 4 A.L.R.3d 517 (9th Cir. 1962); United States v. Smith, 220 F.2d 548, 554 (5th Cir. 1955); Giaraffa v. Moore-McCormack Lines, Inc., 270 F.Supp. 342 (S.D. N.Y.1967); but the defendant has failed to carry that burden by a preponderance of the credible evidence.

The partitions which plaintiff and De-Milta were demolishing consisted of two parallel sections of plywood about seven feet high which were secured by nails, screws, and metal brackets. Defendant first argues that plaintiff was contributorily negligent in using the maul and splitting bar, tools ordinarily used to split wood, against the metal parts of the partitions. But the credible evidence demonstrates that these partitions were of the usual kind which the Barbara Company had demolished in the past.

Moreover, the method of demolition employed by plaintiff and DeMilta was an accepted one, one that had been used in the past with the full knowledge and acquiescence of their employer. Further, the plaintiff and DeMilta were working under the supervision of a foreman whose responsibilities included making sure that all work being done by his men was being done properly.

The defendant's other argument is as follows:

"When ordinarily used to split wood, splitting bars such as the bar which plaintiff and DeMilta were using to demolish the partition became duller.

"After splitting bars such as the bar which plaintiff and DeMilta were using to demolish the partition became so dull that very hard blows on the bar were required to split wood, such bars were not ordinarily used until they were sharpened.

"A reasonably experienced and prudent marine carpenter would not ordinarily use such a splitting bar to split wood after the bar became so dull that very hard blows on the bar were required to split wood. When such a carpenter knew that such a bar "had become so dull, he would see to it that the bar was sharpened before using it further."

What the court is able to discern from this subjunctive argument is that the defendant would have Rapisardi charged with contributory negligence because he had a duty to sharpen the edge of the bar if he knew it were dull. But this argument has no foundation in reality and ignores the weight of the evidence favoring the plaintiff.

Before beginning work on the morning of June 1, 1966, the plaintiff and De-Milta examined their tools and they seemed to be in satisfactory condition. While the evidence does indicate that as the morning passed the plaintiff used more force when wielding his maul, it does not show that the splitting bar at

3. Plaintiff's negligence claim was abandoned at trial.

any time had become so dull that it was no longer safe for use, or, for that matter, that it needed any sharpening at all. Nor did the defendants prove that dullness, even if it were to be found, was causally related to the splintering. Moreover, plaintiff was working with the maul; DeMilta was the one who held the splitting bar against the partition, and it was DeMilta's practice to inspect the bar, not plaintiff's, in the circumstances at bar. Even if it were to be assumed that the bar had become too dull to use and that DeMilta knew or should have known of its dull condition, and even if it were to be assumed that DeMilta had a duty to sharpen the biting edge,[4] plaintiff, nevertheless, cannot be held responsible for a failure to act on the part of his fellow worker.

Finally, while defendant concedes that the chip which injured plaintiff's eye came from the splitting bar, it is unclear, however, from which end of the bar the chip came. Thus the chip may very well have come from the head of the bar and not its point; the possible dullness of the bar may be, therefore, irrelevant.

■■ The preponderance of the credible evidence indicates that the splitting bar had not been misused on the job. Whatever the cause of the accident, whether because the bar was improperly cared for by Barbara or because of a defect in the bar, it is clear that the bar was not fit for its intended use and it therefore rendered the ship unseaworthy.[5] It was the ship's unseaworthiness with respect to the splitting bar that was solely responsible for Rapisardi's accident. The court cannot say that Rapisardi failed to use due care and ordinary prudence in avoiding injury to himself, nor that he failed to make reasonable use of his faculties to discern and avoid any danger in the performance of its duty. The court finds that Rapisardi asserted that degree of care which others of his type and position would ordinarily exercise under comparable conditions.

Turning now to the consequences of the accident, Rapisardi felt the metal chip from the splitting bar enter his eye. Immediately thereafter he experienced pain accompanied by bleeding and the loss of other fluids from his eye. He was taken by private automobile to the Beekman Downtown Hospital; x-rayed, and then transferred by ambulance to the New York Eye and Ear Infirmary. There he was given emergency treatment, and later on the same day, under the direction of Dr. Gerald B. Kara, he underwent major surgery during which his wound was repaired and the metal chip was extracted by the use of an electromagnet. Plaintiff remained in the hospital for eleven days during which time he was given medication for pain and sedation. Upon discharge from the New York Eye and Ear Infirmary plaintiff continued under the care of Dr. Kara, who, during this period of time, gave him antibiotics to counteract the inflammation of the eye.

Under Dr. Kara's prescription plaintiff was readmitted to the hospital on July 21, 1966, at which time a second operation was performed, this time for the removal of a traumatic cataract. After this operation the plaintiff remained in the hospital for nine days and again received medication for pain.

Approximately six months after the second operation Dr. Kara determined that plaintiff had lost all vision in his left eye.

The effects of his injury will always be with plaintiff. He is still under the care of Dr. Kara, requiring periodic examinations for evidence of intraocular inflammation which, if it occurs, will necessitate the complete removal of the eye. External pressure on the eye produces pain and so does the shrinkage of the eye which is caused by its atrophic

---

4. There were facilities on board the ship for the sharpening of tools and at times the men would sharpen the tools they were using.

5. Van Carpals v. S.S. American Harvester, *supra.*

state. Plaintiff's eye is prone to infection and irritation and it still requires the use of drops. The loss of vision in his left eye has meant a loss of stereopsis—depth perception—and this has had a plain effect on all of plaintiff's everyday activities—"almost in all things—all the things are different." And last but not least his loss has had the expected psychological impact of producing an increased feeling of vulnerability.

Salvatore Rapisardi is now sixty years old. This court found him to be a small and timid man who has been overwhelmed by his injury. He has difficulty and occasionally pain when washing his face. He is afraid to cross the street alone. He used to enjoy playing the Italian bowling game, Bocce, but now he no longer engages in this activity, because of the loss of stereopsis and the accompanying inability to judge the location of the balls. He now needs a long time to dress himself. He claims that his eye hurts when he watches television. Changes of weather cause his eye to redden and tear, and when it is cold pus occasionally emits. Rapisardi in his own words is actually useless and helpless, if for no other reason than he thinks himself to be. Whether this immigrant, illiterate in English and nearly so in Italian, could, at the age of sixty, find gainful employment, is quite dubious. Rapisardi had only three years of schooling in Italy and almost his entire work experience consisted of marine carpentry work. This court finds that he is definitely unable to return to work as a marine carpenter, and, while there may possibly be some other forms of employment which may be available to plaintiff, on the basis of the record in this case, it could only be a matter of the purest conjecture and speculation as to how much, if anything, plaintiff is capable of earning in the future. *See* Conte v. Flota Mercante Del Estado, 277 F.2d 664, 670 (2d Cir. 1960); Alexander v. Nash-Kelvinator Corp., 271 F.2d 524, 527 (2d Cir. 1959); Giaraffa v. Moore-McCormack Lines, Inc., 270 F.Supp. 342 (S.D.N.Y.1967).

It was Dr. Kara's opinion, based upon plaintiff's age at the time of his accident, his background, and his loss of stereopsis, that plaintiff could not return to marine carpentry work. This has not been controverted. There was testimony from Mr. Slater, a rehabilitation expert, that there are agencies available which are engaged in vocational rehabilitation and to which one-eyed persons may go free of charge. Mr. Slater, however, could only testify to a few cases in which one-eyed men with problems similar to plaintiff's had been rehabilitated, and even as to these he was unable to say just how successful the rehabilitation had been. In the one case which he cited specifically the man had become a washroom attendant. Mr. Slater admitted that in determining suitability for rehabilitation each man had to be judged as an individual and that all aspects of the man had to be considered. Mr. Slater has never examined plaintiff.

■■ Defendant impleaded Barbara on the theory that if it, United Fruit, were held liable to plaintiff, then it would be entitled to indemnity from Barbara since the splitting bar in question was furnished by Barbara. It is clear that on these facts Barbara has indeed breached the warranty of workmanlike service that it owed to United Fruit; accordingly, defendant is entitled to indemnity. Ryan Stevedoring Co. Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); Mortensen v. A/S Glittre, 348 F.2d 383 (2d Cir. 1965); DeGioia v. United States Lines Co., 304 F.2d 421 (2d Cir. 1962). The amount of the indemnity includes the reasonable value of counsel services, *e. g.*, Massa v. C. A. Venezuelan Navigacion, 332 F.2d 779 (2d Cir.) cert. denied 379 U.S. 914, 85 S.Ct. 262, 13 L.Ed.2d 186 (1964); Norris, Maritime Personal Injuries § 61 (1959); United Fruit and Barbara have stipulated that they will dispose of this item by mutual agreement.

■ It was stipulated by the parties that at the time of the accident plaintiff

had a life expectancy of 17.3 years, that at that time he was earning $5328.80 per annum, and that his salary would increase by 10 percent every three years. The court finds that plaintiff had a work expectancy at the time of his accident of 7.5 years. Based on these figures, the court finds that plaintiff has lost up to the date of judgment $16,786.00 and that he will lose in the future $27,976.00, the present value of which discounted at a rate of 5 percent comes to $26,917.00.[6] Damages for past and future pain and suffering are assessed at $65,000.00. It was agreed by the parties that plaintiff's medical damages amounted to $1,700.00.

It is the judgment of this court that Salvatore Rapisardi recover from United Fruit Company the sum of $110,403.00. United Fruit Company is to be indemnified by Sam Barbara & Company in the same amount plus the reasonable value of its counsel's services.

The foregoing constitutes the required findings of fact and conclusions of law.

So ordered.

---

6. Wages lost prior to judgment are not discounted. Montellier v. United States,

202 F.Supp. 384, 424 (E.D.N.Y.) aff'd. 315 F.2d 180 (2d Cir. 1963).