427 F.2d 244
 Giacomo LA CAPRIA, as Administrator of the Estate of Santo
La Capria, Deceased, Plaintiff-Appellee,
v.
COMPAGNIE MARITIME BELGE, Defendant-Appellant, and William
Spencer & Son Corp., Defendant-Appellee.
WILLIAM SPENCER & SON CORPORATION, Third-Party Plaintiff,
v.
TRANSOCEANIC STEVEDORING CORP., Third-Party Defendant.
 Nos. 606, 607, Dockets 34113, 34114.
 United States Court of Appeals, Second Circuit.
 Argued March 19, 1970.
Decided May 28, 1970.
 
 1
 Thomas H. Healey, New York City (Hill, Betts, Yamaoka, Freehill & Longcope, Robert C. Buff, New York City, on the brief), for defendant-appellant Compagnie Maritime Belge.
 
 
 2
 John Nielsen, New York City (Fogarty & Nielsen, New York City, on the brief), for defendant-appellee William Spencer & Son Corp.
 
 
 3
 Chester A. Hahn, New York City (Sylvia Miller, New York City, on the brief), for plaintiff-appellee Giacomo La Capria.
 
 
 4
 Before MOORE and FEINBERG, Circuit Judges, and BONSAL, District judge.*
 
 BONSAL, District Judge:
 
 5
 Defendant Compagnie Maritime Belge (Belgian Line) appeals from a judgment of the United States District Court for the Southern District of New York filed on July 5, 1968, following a non-jury trial before Judge Edelstein which awarded the plaintiff damages in the sum of $217,989.64 against Belgian Line, and dismissed the claim of plaintiff against defendant William Spencer & Son Corp. (Spencer), the cross claims of Belgian Line and Spencer against each other, and the third-party action brought by Spencer against Transoceanic Stevedoring Corp. (Transoceanic).
 
 
 6
 Plaintiff's intestate, a longshoreman, was injured on March 1, 1961, in the No. 2 lower hold of the S.S. Steenstraete which was berthed at one side of Pier 14, North River. Belgian Line was the owner of the vessel. It is undisputed that the accident occurred at approximately 11:30 a.m. when the plaintiff's intestate was struck on the back of his head and shoulder by a 100-lb. sack of flour which fell from a pallet in the process of being lowered by a winch into the hold of Hatch No. 2. On the other side of Pier 14, Spencer was unloading sacks of flour from Pennsylvania Railroad Lighter 440 by placing the sacks of flour on wooden pallets, each holding 24 100-lb. sacks stacked in four tiers. Each tier consisted of six sacks, four being placed side by side with their longer sides touching, and two sacks being placed with their shorter sides touching and the longer sides touching the sides of the other four sacks. The first, second and third tiers were placed sackupon-sack, straight up, while the fourth tier was reversed. Each loaded pallet was taken by a Spencer hilo fork lift to a designated spot on the pier from which each pallet was taken by employees of Transoceanic, Belgian Line's stevedore, to another spot on the pier, from where a second Transoceanic hilo brought the pallet to the string piece (the edge of the pier) where it was taken aboard the ship by the ship's gear. The pallet from which the sack of flour fell on the plaintiff was approximately the 30th to be taken aboard the vessel that morning at Hatch No. 2.
 
 
 7
 Expert testimony was taken at the trial, from which Judge Edelstein, in an opinion reported at 286 F.Supp. 980 (S.D.N.Y.1968), concluded that the method used by Spencer in tiering the sacks as they were unloaded from the Pennsylvania lighter was not a safe and proper method, and that 'This unstable method of tiering caused a sack to fall from its pallet and that sack struck (plaintiff).' 286 F.Supp. at 984. Judge Edelstein also found that by lowering the unstable pallet loads of flour aboard the S.S. Steenstraete, Transoceanic rendered her unseaworthy with respect to plaintiff, citing Candiano v. Moore-McCormack Lines, Inc., 382 F.2d 961, reh. denied, 386 F.2d 444 (2d Cir. 1967), cert. denied, 390 U.S. 1027, 88 S.Ct. 1416, 20 L.Ed.2d 284 (1968), and Alexander v. Bethlehem Steel Corp., 382 F.2d 963 (2d Cir. 1967), cert. denied, sub nom. International Terminal Operating Co., Inc. v. Alexander, 393 U.S. 1064, 89 S.Ct. 717, 21 L.Ed.2d 707 (1969), and that the defendant Belgian Line was negligent in permitting it to be done, since the vessel's officers either had actual notice of, or at least ample opportunity to observe, the improperly tiered loads coming aboard the vessel.
 
 
 8
 We find that the evidence amply supports the trial judge's findings of negligence and unseaworthiness,[1] and the damages awarded to plaintiff, and we therefore affirm the judgment of the District Court in favor of the plaintiff against the defendant Beligian Line.
 
 
 9
 Judge Edelstein denied Belgian Line's claim over against Spencer, on the ground that Spencer was merely the shenango or freight forwarder and therefore owed no duty to Belgian Line for breach of any warranty of workmanlike service. We disagree.
 
 
 10
 The palletizing by Spencer was done across the pier from the Steenstraete, which was in plain view. It is obvious that Spencer's employees knew that the pallets were being loaded on board the vessel as they were picked up by Transoceanic. Indeed, Spencer's foreman testified that he knew that the flour was destined for the Steenstraete. He also testified that for the overtime work done by Spencer employees he submitted a bill to Belgian Line which stated that it covered 'flour for the Steenstraete.'[2] He further testified that he knew it was his responsibility to see to it that the palletized flour was safe for tiering and for the crossing of the pier to be loaded on the vessel. At argument it was asserted by appellant's counsel, without contradiction, that Spencer occupies a monopoly position, unloading all railroad lighters at the pier. It cannot on the facts of this case be seriously contended that Spencer was not a stevedore engaged in stevedore's work, see Hartnett v. Reiss Steamship Company, 421 F.2d 1011, 1016 (2d Cir. 1970).
 
 
 11
 The question remains whether, as a stevedore, Spencer's implied warranty of workmanlike service extended to the Belgian Line. Spencer contends that the warranty does not estend to the Belgian Line, because there was no express contract in existence at the time the accident occurred. But this contention fails to recognize the nature of the implied warranty of workmanlike service, for
 
 
 12
 'The obligations which arise from warranty are not limited to the confines of an action on the contract; the zone of responsibility may extend beyond those in direct contractual relationship. (citing cases) * * *
 
 
 13
 'Thus while the cases speak in the language of contract, it is misleading to cling to the literal implications of that language. The scope of the stevedore's warranty of workmanlike performance is to be measured by the relationship which brings it into being. Since the shipowner here was held liable for injuries the jury found were the foreseeable result of the stevedores' failure to perform in a workmanlike fashion, it may recover indemnification, whether it was strictly a 'third-party beneficiary' or not. Waterman S.S. Corp. v. Dugan & McNamara, Inc., supra, 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169.' DeGioia v. United States Lines Company, 304 F.2d 421, 425, 426 (2d Cir. 1962).
 
 
 14
 This approach was reaffirmed in Williams v. Pennsylvania Railroad Company, 313 F.2d 203 (2d Cir. 1963). In that case, Spencer was unloading a Lehigh barge with the aid of a Pennsylvania Railroad floating crane; a Spencer employee, Williams, was injured as a result of the negligent operation of the crane, and obtained a judgment against the Pennsylvania. A third-party claim by the Pennsylvania against Spencer was upheld. It was held that the Pennsylvania was the beneficiary of Spencer's warranty of workmanlike service to Lehigh, which satisfied Lehigh's duty to exercise due care in the use of the Pennsylvania floating crane. The court stated that:
 
 
 15
 'Recovery on this theory is not precluded by the fact that the Pennsylvania was not a party to the stevedoring contract between Spencer and the Lehigh. * * *
 
 
 16
 '* * * Spencer must have known, at the time it contracted to unload heavy cargo for the Lehigh Valley, that cranes would be needed, and it quite obviously expected to meet this need by making use of a hoister belonging to some railroad. That the Pennsylvania, or some other railroad other than the Lehigh Valley, would thus probably be involved in the unloading operation; that this third party would stand to benefit from Spencer's performance of its warranty of workmanlike service, or suffer from its non-performance; and that-- unlike the Isbrandtsen situation-- the third party would be involved in a close working relationship with Spencer essential to Spencer's performance of its basic contractual duty-- all these facts were clearly within Spencer's knowledge at the time of contracing.' 313 F.2d at 210, 212.
 
 
 17
 We do not find that on the facts of this case a third-party beneficiary relationship was necessarily made out, although such would appear to come within the ambit of the approach taken in Williams, if not its actual holding; but the court went on to say, citing the DeGioia case, that:
 
 
 18
 'Beyond all this, we have held that a stevedore's warranty of workmanlike performance is not limited to persons who can bring themselves within the rules of third-party beneficiary law.' 313 F.2d at 212.
 
 
 19
 On the facts of this case, and in light of the DeGioia and Williams cases, we hold that Spencer did impliedly warrant to the Belgian Line that it would tier the sacks of flour on the pallets in a workmanlike manner, and that it is therefore liable to the Belgian Line for any damages it sustained as a result of the breach of that warranty. We are not holding that in every case the ship has a claim against a shenango or freight forwarder for breach of an implied warranty of workmanlike service. We hold only that on the facts of this case, where the shenango had a monopoly on certain piers, where its services were rendered on the same pier, where it knew in unloading the lighter that the pallets were destined to be loaded on the vessel across the pier, and where it charged the ship for part of its services, that the ship has such a claim.
 
 
 20
 Judge Edelstein found that the improper palletizing was the cause of plaintiff's accident, but held that the proximate causes of plaintiff's accident were the unseaworthiness of the vessel and the negligence of the Belgian Line, factors which he apparently felt constituted intervening causes. With this we also disagree.
 
 
 21
 There was evidence at the trial that Transoceanic was dissatisfied with the way in which the sacks had been palletized, and that the ship knew, or should have known, of their unsafe condition. This would support a finding of negligence on the part of Transoceanic and also on the part of Belgian Lines, which negligence concurred with the fault of Spencer in causing plaintiff's accident. It did not constitute an intervening cause such as might relieve Spencer from liability for its own fault. The type of accident which was foreseeable as a result of Spencer's failure properly to palletize the bags is precisely the type of accident which did in fact occur. See DeGioia, supra, 304 F.2d at 424.
 
 
 22
 It would no doubt be fairer if the payment of damages could be apportioned between Spencer, Transoceanic, and the Belgian Line. However, the admiralty law does not so provide. On the contrary, it gives Belgian Line, despite the unseaworthiness of its vessel and its own negligence, a cross-claim against Spencer for breach of its implied warranty of workmanlike service. In any event, Spencer was the party most clearly at fault.
 
 
 23
 The judgment below in favor of the plaintiff against the Belgain Line is affirmed, and the judgment below dismissing the Belgian Line's claim against Spencer is reversed, with direction that judgment be entered in the District Court in favor of Belgian Line against Spencer, with costs and attorneys' fees.
 
 
 
 *
 Of the Southern District of New York, sitting by designation
 
 
 [1]
 It is not clear that this was actually a Candiano-Alexander situation, as the unstable pallet constituted an unseaworthy condition, not just operational negligence, but assuming that it was, Judge Edelstein's determination is well supported by Tarabocchia v. Zim Israel Navigation Co., 417 F.2d 476 (2d Cir. 1969)
 
 
 [2]
 Appellant's counsel suggested at argument that the Pennsylvania may have billed the ship for Spencer's services other than overtime, but as appellee's counsel observed, there is no support for this in the record