**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**CERTAIN REAL PROPERTY AND PREMISES, KNOWN AS 890 NOYAC ROAD, NOYAC, NEW YORK, Defendants,**

**and**

**Josephine A. Counihan, Claimant–Appellant.**

No. 900, Docket 90–6231.

United States Court of Appeals,
Second Circuit.

Argued Jan. 24, 1991.

Decided Oct. 3, 1991.

Richard B. Lind, New York City, for claimant-appellant.

Rosanne M. Harvey, Asst. U.S. Atty. E.D.N.Y., Brooklyn, N.Y. (Andrew J. Malo-ney, U.S. Atty. E.D.N.Y., Robert L. Begleiter, Charles S. Kleinberg, Deborah B. Zwany, Asst. U.S. Attys. E.D.N.Y., of counsel), for plaintiff-appellee.

Before VAN GRAAFEILAND, MINER and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Claimant-appellant Josephine A. Counihan appeals from a judgment of the United States District Court for the Eastern District of New York, Leonard D. Wexler, *Judge*, entered on July 2, 1990, following a jury trial, that forfeited her interest in defendant real property pursuant to a provision of the Comprehensive Crime Control Act of 1984, 21 U.S.C. § 881(a)(7) (1988). Counihan contends, *inter alia*, that the government was improperly allowed to amend its complaint to conform to the proof at trial.

We agree, and accordingly reverse and remand.

## Background

### A. *The Facts.*

Josephine Counihan owned a one-half interest in a property at 890 Noyac Road in Noyac, New York (the "Property").[1] She acquired her interest in the Property from her son, Thomas Counihan, in 1982. Josephine Counihan rented the property to finance its upkeep. In July 1988, the persons residing at the Property were Thomas Counihan, Joan Maddock Carbaugh, Paul Garland, Salvatore Mata, Mata's girlfriend Susan Brown Restrepo, and Restrepo's two children. On July 22, 1988, a police agent purchased a quantity of cocaine at the Property. Later that day, the Town of Southampton police executed a search warrant on the Property, arrested Thomas Counihan, and recovered drugs, drug paraphernalia, and cash. Thomas Counihan was subsequently released from custody when authorities failed to file a timely indictment, and he became a fugitive. Car-

---

1. A one-half interest in the Property is also owned by Patricia Nugent Ljundquist, the former wife of Counihan's son, Thomas Counihan. The government does not seek to forfeit Ljund-quist's interest in the Property. On November 1, 1990, some time after the government took possession of the Property, the house was destroyed by fire.

baugh and Garland moved out of the Property in August 1988, and Mata and Restrepo moved out in January 1989.

Josephine Counihan testified that soon after the raid, she was contacted by Carbaugh, who told Counihan that the police had failed to find some drugs that had been hidden at the Property, presumably by Thomas Counihan, and asked Counihan if she should bring the drugs to Counihan. Counihan testified that she emphatically opposed this suggestion, and told Carbaugh to "go off and do whatever you do with anything like that." Several months later, Carbaugh agreed to cooperate with the police. Wearing a body wire that permitted the police to tape the discussion, Carbaugh visited Counihan's home on February 2, 1989.

The government asserts that the purpose of the visit was to "engage Mrs. Counihan in a conversation concerning the disposition of a certain quantity of cocaine that the Southampton Town Police failed to locate during [the July 22 raid]." The conversation included the following exchanges:

> Carbaugh: I don't know [Garland] didn't tell me that. He says he's got a job when he gets out. And so I asked him—I asked him if he's gonna' pay you back any of the money that he owes you for the coke.
>
> Counihan: Yeah.
>
> Carbaugh: I says, "Are you gonna' pay her—Mrs. Counihan back?["] He goes, "Well uh, I don't really know how much I owe her."
>
> Counihan: Did you tell him pay me back—oh for the coke. Sure.
>
> Carbaugh: Yeah.
>
> Counihan: Well he knows how much he got for it.
>
> . . . .
>
> Carbaugh: I know. Well that's why I—I said to [Garland] I wasn't payin' any of his debts. I says, you know that's your, debt, it's not mine. I says that was ju—between you, Tommy, and Mrs. Counihan or whatever. I says, "It's not my debt. I'm not payin' it."

> Counihan: Well, you were the one that called up said, "Shall we do this with it?" Right, okay? So he did ([unintelligible])—he was supposed to go out and sell it or your [sic] were supposed to, I don't know what.
>
> . . . .
>
> Counihan: Joan, they knew what they had there, and nobody did anything.
>
> Carbaugh: Well he says there was a halfa' ounce when he weighed it up.
>
> Counihan: And what did Tommy say?
>
> Carbaugh: Tommy said there was about—what, two ounces, or an ounce and a half.
>
> Counihan: No, no way.
>
> . . . .
>
> Counihan: I shou—I shouldnt've been so darn ah believing, or nice to, nice.
>
> Carbaugh: Well, [Garland] seems to think he doesn't owe you much for the coke. I don't know.
>
> Counihan: No of course not, no. I mean you take a little—ah take a couple of snorts yourself, why would he wanna' pay for it?
>
> Forrest Counihan (husband of Josephine Counihan): He probably thinks you owe him!
>
> Carbaugh: (laughs)

### B. *Proceedings Below.*

#### 1. *The complaint and answer.*

One week after the Carbaugh conversation, on February 9, 1989, the government filed a complaint *in rem* seeking forfeiture of the property pursuant to 21 U.S.C. § 881(a)(7) (1988). The complaint predicated forfeiture on the drug sale and raid at the property on July 22, 1988. Counihan's answer posited an affirmative "innocent owner" defense, asserting that she "was without knowledge of the alleged drug trafficking of Thomas Counihan" at the Property.

#### 2. *Proposed pretrial orders.*

In its proposed pretrial order, the government framed the issues for trial as follows:

(a) Did claimant Josephine Counihan have knowledge of drug activity at the defendant premises located at 890 Noyac Road, Noyac, New York; and

(b) Did she constructively "consent" to the illegal drug activity by failing to take all reasonable measures to prevent the proscribed use of her property.

Counihan's pretrial order asserted that she could meet her burden of proving innocent owner status by establishing *either* that:

(a) She did not have actual knowledge of drug activity at the defendant premises; *or*

(b) She did not actually consent to the illegal drug acitivity [sic].

The district court rejected Counihan's position, concluding that a conjunctive construction of the language of section 881(a)(7) was appropriate. In a pretrial opinion addressing the issue, the court stated:

21 U.S.C. § 881(a)(7), which reads "[no property shall be forfeited under this chapter,] to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner," shall be construed to read without knowledge *and without consent.*

*United States v. Certain Real Property and Premises Known as 890 Noyac Rd., Noyac, New York,* 739 F.Supp. 111, 115–16 (E.D.N.Y.1990).

### 3. *Counihan's motion in limine.*

On May 21, 1990, Counihan moved *in limine* to suppress several tape recordings, including the February 2, 1989 conversation with Joan Maddock Carbaugh (the "Carbaugh tape"). Counihan contended that the Carbaugh tape constituted a violation of Counihan's right to privacy, citing *United States v. Premises and Real Property at 4492 S. Livonia Rd., Livonia, New York,* 889 F.2d 1258, 1268–69 (2d Cir.1989). The district court never ruled on Counihan's motion.

### 4. *The trial.*

The government has the initial burden under section 881(a)(7) to establish probable cause that a property was used to facilitate drug crimes. *See United States v. 141st St. Corp.,* 911 F.2d 870, 876 (2d Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991). Once the government has met this requirement, the burden shifts to the owner of the property to establish an innocent owner defense, i.e., that the drug crimes occurred "without [her] knowledge or consent." 21 U.S.C. § 881(a)(7) (1988). Counihan, who had contested probable cause in her answer, later stipulated to probable cause. Therefore, when the case proceeded to trial, she put her case on first in an attempt to establish that she was an innocent owner. *See 141st St. Corp.,* 911 F.2d at 876.

In her opening statement, Counihan characterized the Carbaugh tape as an attempt "to entrap her months after the event ... and ... create evidence to show in fact she wasn't an innocent owner." The government's opening made no reference to the Carbaugh tape, stressing instead the extent of Thomas Counihan's drug activity at the Property and Josephine Counihan's assertedly frequent presence there.

Counihan testified first on her own behalf. Her counsel preemptively elicited her version of the conversation she had with Carbaugh immediately after the July 22 raid and the taped conversation the two had on February 2 that the government was prepared to offer into evidence. Counihan testified that the money discussed in the February 2 taped conversation was overdue rent, rather than drug proceeds. The government subsequently cross-examined Counihan concerning those conversations. Following redirect and recross, Counihan rested.

The government then offered the testimony of Susan Brown Restrepo, a resident at 890 Noyac Road during the relevant period; Philip Chananie, an acquaintance of Thomas Counihan, occasional visitor to 890 Noyac Road and government informant; and Kenneth Mujsce, a Southampton Town

police officer who investigated Thomas Counihan and participated in the raid on the Property on July 22, 1988. The government concluded its case by playing the Carbaugh tape to the jury.

In rebuttal, Counihan read to the jury portions of the depositions of Salvatore Mata and Joan Carbaugh. The government also read portions of the depositions into evidence. Finally, Counihan returned to the stand for a brief direct and cross-examination.

In summation, Counihan's counsel argued that the evidence failed to show that she was aware of her son's drug activity at the Property. In one critical passage, counsel stressed the importance of the July 22, 1988 date:

> What do I mean by timing? I mean the date, July 22, 1988. That's the critical date here. Don't get deflected somehow from that critical date. After July 22, 1988, Josephine Counihan probably knew that there was drug activity going on at 890 Noyac Road. Probably all of Southampton knew there was drug activity going on at 890 Noyac Road. The point is, ladies and gentlemen, I'm sure you can understand this, is whether she knew about it before. And in that regard, and I don't know if the government will emphasize this, but in thinking about that tape which was made on February 2, 1989, which I submit was made by someone under the protection of the Southampton Police to entrap Josephine Counihan and as we told you, to create evidence against this woman, think what that means when it's done six months after the event?

The government argued in summation that the evidence of Counihan's knowledge of and consent to the drug activity at the Property was "overwhelming." In addition, the government stated:

> [T]here is no need for the government to prove or for you to believe that Mrs. Counihan committed a drug crime in connection with 890 Noyac Road, there's no need for you to believe that to return a verdict for the government. None-

theless, in this case the evidence categorically and unequivocally demonstrates that Mrs. Counihan did commit a drug crime in connection with 890 Noyac Road. She told you that with her own words. She told you that when she didn't know she was being taped.

5. *Jury instructions, special interrogatories, and the amendment of the complaint.*

After the court charged the jury, he provided it with special interrogatories separately inquiring as to Counihan's knowledge of and consent to the drug activity at the Property as a specific precaution against an appellate ruling (contrary to the district court's pretrial decision, 739 F.Supp. at 115–16) that an "innocent owner" defense could be premised upon lack of either knowledge or consent. No time period was specified in the interrogatories. During deliberations shortly thereafter, the jury sent back a note seeking a definition of "consent." The district court elicited proposed definitions from the parties. Counihan's proposal in response included the following:

> Hence, if you find that Josephine Counihan has demonstrated that she did not knowingly consent to the drug activities in connection with 890 Noyac Road, *before the police search on July 22, 1988* [emphasis added], then you must find that she did not consent within the meaning of the law.

The government's proposed instruction stated in pertinent part:

> If you believe that the claimant, *prior to February 15, 1989* [emphasis added], committed a drug crime in connection with drugs that were stored at 890 Noyac Road though sold elsewhere, then you must find that she consented to the use of her property for drug activity.[2]

Over Counihan's objection, the district court declined to adopt the July 22 limitation.

Subsequently, the jury sent back another note that inquired:

---

**2.** The date of seizure of the Property was February 15, 1989.

What is our decision based upon regarding knowledge and consent? Until date of police raid [July 22, 1988] or until home was taken by the government [February 15, 1989]?

At this juncture, the government informally moved to amend the complaint to conform to the evidence pursuant to Fed. R.Civ.P. 15(b). The district court ruled that the complaint was amended to permit consideration of drug activity up to February 15, 1989. The jury was then instructed as follows:

> Knowledge means prior or contemporaneous awareness of illegal drug activity.... Knowledge of the prior drug activity learned only through the police raid is not knowledge for this purpose. You may consider any and all knowledge of the illegal activities up to February 9, 1989, the date of the seizure.[3]

On the next day of deliberations, the jury reached a verdict in favor of the government. A corresponding judgment was entered by the district court on July 2, 1990.

This appeal followed.

### Discussion

Counihan contends that the district court erred:

(1) in allowing the government to amend its complaint to allege that Counihan knew and consented to drug activity at the Property after July 22, 1988;

(2) in admitting evidence of Counihan's son's reputation as a drug dealer; and

(3) in instructing the jury that Counihan had to prove that she lacked both knowledge and consent to establish innocent owner status.

We proceed to address each of Counihan's arguments.

### A. *Amendment of the Complaint to Conform to the Evidence.*

█ We review the district court's allowance of the amendment of the government's complaint to conform to the evi-

dence presented at trial for abuse of discretion. *See Royal Am. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1017 (2d Cir.1989). Fed.R.Civ.P. 15(b) provides in pertinent part:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.

In determining whether to allow an amendment pursuant to this provision, the questions are:

> "whether the new issues were tried by the parties' express or implied consent and whether the defendant 'would be prejudiced by the implied amendment, i.e., whether he had a fair opportunity to defend and whether he could offer any additional evidence if the case were to be retried on a different theory.'"

*Royal Am.*, 885 F.2d at 1017 (quoting *Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1086 (2d Cir. 1977) (quoting 3 J. Moore, *Moore's Federal Practice* ¶ 15.13[2], at 993 (2d ed. 1966))).

We address first the question of consent. "Usually, consent may be implied from failure to object at trial to the introduction of evidence relevant to the unpled issue." *Luria Bros. & Co. v. Alliance Assurance Co.*, 780 F.2d 1082, 1089 (2d Cir.1986) (citing *Usery v. Marquette Cement Mfg. Co.*, 568 F.2d 902, 906 (2d Cir.1977)). Failure to object to evidence that is relevant to both pled and unpled issues does not imply consent to try the unpled issue, however, "absent some *obvious attempt* to raise [it]." *Id.* (emphasis added). Whether a party has "implicitly consented to the trial of an issue not presented by the pleadings depends on whether [the party] recognized that the issue had entered the case at trial." *Id.* (citing 6A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1493, at 462 (1971)).

█ The government argues that "the pre-trial order, the evidence [Counihan] offered at trial, and claimant's failure to ob-

---

**3.** *But see supra* note 2 and accompanying text. It appears that the government's in rem complaint was filed on February 9, 1989, but the seizure of the Property occurred six days later.

ject to the government's evidence show incontrovertibly that [Counihan] consented to try the issue which was the subject of the amendment." The government evidence in question is the Carbaugh tape; the Counihan evidence is her direct testimony regarding (1) the conversation on that tape, and (2) her prior related conversation with Carbaugh.

This argument overlooks, however, the fact that Counihan moved *in limine* to exclude the Carbaugh tape, and the district court never ruled on that motion. Admittedly, both Counihan's motion and the government's opposition were directed exclusively to constitutional arguments, and *did not implicate in any way the question of* the issues to which the Carbaugh tape was relevant. We are nonetheless loath to construe a motion to exclude evidence as a consent to its admission, at least in the circumstances presented here.

Counihan's testimony on direct examination concerning the taped conversation (and the prior related conversation with Carbaugh) could certainly be understood as preemptive in light of the court's failure to grant or rule upon the motion *in limine.* Similarly, her failure to object when the Carbaugh tape was offered in evidence toward the end of the trial could be explained as a recognition that this cat was well out of the bag. It would have been preferable, of course, for Counihan to have pressed for a ruling on her motion *in limine,* or, for that matter, for the district court to have decided it. In any event, the overall picture as to consent is at best rather confused.

Concededly, neither in her motion *in limine* nor at any other time did Counihan object to the introduction of the Carbaugh tape on grounds of relevance. This evidence could have been offered, however, for at least two purposes: (1) pursuant to Fed.R.Evid. 404(b), to rebut Counihan's claim that she had no knowledge about drug activity in general, or drug activity at the Property in particular; and (2) to prove Counihan's knowledge of and consent to post-July 22 drug activity.

Rule 404(b) permits the introduction of "evidence of other crimes, wrongs, or acts ... as proof of ... knowledge." Because Counihan's innocent owner defense is predicated in part upon her ignorance about drug activity in general, and she asserted on direct examination that she has no familiarity with drug activity, the Carbaugh tape was admissible to rebut this contention. In addition, although Counihan testified that she had some general knowledge of drug activity at the Property because of what she had "heard" regarding the July 22, 1988 raid, and the trial judge instructed the jury that such knowledge was to be disregarded, the Carbaugh tape was in all likelihood admissible to establish greater knowledge concerning the drug activity at the Property prior to the raid than Counihan had conceded. Counihan briefly posited this theory of admissibility, which the government vigorously contested, in posttrial argument about the definition of "consent" that occurred during the jury's deliberations. The second basis for admission, as relevant evidence to prove Counihan's knowledge of post-July 22 drug activity at the Property, leads to the dispute at the heart of this appeal, whether her knowledge of post-July 22 drug activity was placed in issue at trial.

Assuming that the Carbaugh tape was admissible on both grounds, amendment of the complaint to allow the evidence to be used to prove Counihan's knowledge of post-July 22 drug activity depends upon whether the government made an "obvious attempt" to use the evidence for this purpose. *See Luria Bros.,* 780 F.2d at 1089. The record belies such an effort. The original pleadings, of course, focus on activity up to July 22. The government's complaint used the July 22 drug sale and raid at the property to frame its allegations, and Counihan's answer denied "knowledge of the alleged drug trafficking of Thomas Counihan," which ended with his arrest on July 22. Subsequent pretrial papers, including the government's proposed pretrial order and its papers in opposition to Counihan's motion *in limine* to suppress the Carbaugh tape, do not raise the issue of post-July 22 activity. The government's

opening focused exclusively upon pre-July 22 activity involving Thomas Counihan. Only in the government's *summation* does a theory of forfeiture based upon Counihan's drug activity after July 22 arise.[4] Thereafter, in response to the jury note posing the issue as to post-July 22 activity, both parties explicitly addressed the issue, for the first time, in their proposed responses to the jury's inquiry. Thus, the record provides no basis on which to imply consent to try the issue of post-July 22 knowledge.

The second inquiry under rule 15(b) is whether Counihan was prejudiced by allowance of the amendment. *See Royal Am.*, 885 F.2d at 1017; *Luria Bros.*, 780 F.2d at 1089; *Browning*, 560 F.2d at 1086. Prejudice is defined as " ' "whether [Counihan] had a fair opportunity to defend and whether [s]he could offer any additional evidence if the case were to be retried on a different theory." ' " *Royal Am.*, 885 F.2d at 1017 (quoting *Browning*, 560 F.2d at 1086 (quoting 3 Moore ¶ 15.13[2], at 993)). The lack of opportunity to contest an issue overlaps substantially with the question of implied consent. *See Usery*, 568 F.2d at 907 n. 8; 6A Wright § 1493, at 40. Both the opportunity to contest an issue and implied consent to its trial depend upon an awareness that the issue has been introduced. *See Luria Bros.*, 780 F.2d at 1089–90; 6A Wright § 1493, at 40.

As noted above, Counihan's closing argument focused on pre-July 22 activity, consistent with her objections when the issue of post-July 22 activity arose during jury deliberations. Only after the conclusion of the trial did the district court recognize the introduction of the issue. Counihan was not aware during the course of the trial, i.e., when she would have had an opportunity to present contrary evidence, that the issue was being tried. *See Luria Bros.*, 780 F.2d at 1089.

We recognize that Counihan *did* present some evidence, in the form of her own direct testimony, to explain and rebut the implications of the Carbaugh tape. To the extent that she did so to bolster her credibility, she may have made the best case possible for her position. In other words, Counihan may have presented all the evidence she could have with respect to post-July 22 knowledge. Given the confused context in which this proof was presented, however, we decline to speculate about how Counihan might have dealt with the issue of post-July 22 knowledge had it been squarely presented.

Finally, we note the government's argument on appeal that "in truth, no amendment of the complaint was necessary at any time." Specifically, the government contends that once it pled the July 22, 1988 events to establish probable cause, 21 U.S.C. § 881(a)(7) (1988) imposed the burden upon Counihan to establish innocent ownership, and the government was free to rebut Counihan's assertion with evidence of other unlawful activity revealed during pretrial discovery. Clearly, the government could have done so if it had amended its complaint before trial to specify that activity. The precise language of the innocent owner defense, however, is that "no property shall be forfeited under [§ 881(a)(7) ] ... by reason of *any act or omission* established by [the] owner to have been committed or omitted without the knowledge or consent of that owner." 21 U.S.C. § 881(a)(7) (1988) (emphasis added). The emphasis in this language upon knowledge or consent as to specific acts or omissions precludes our acceptance of the government's position, for which no pertinent authority is cited to us.

We conclude that the district court abused its discretion by allowing the post-trial amendment of the complaint. In view

**4.** At oral argument, Counihan contended that her counsel's statement in summation that "[a]fter July 22, 1988, Josephine Counihan probably knew that there was drug activity going on at 890 Noyac Road" constituted an admission that Counihan had knowledge of post-July 22 drug activity. She argues that such an admission would never have been made if she had consented to an amendment that put such activity in issue. It is at least equally plausible, however, to regard this statement as an acknowledgment, consistent with Counihan's trial testimony, that she became aware of drug activity that occurred at the Property prior to July 22, 1988 as a result of the widespread publicity accorded the July 22 raid on the Property.

of the remand which this ruling requires, we briefly address the remaining issues raised by Counihan.

### B. *Admissibility of Reputation Evidence.*

 During the direct testimony of Philip Chananie, an acquaintance of Thomas Counihan and the government informant who told the Southampton police about Thomas Counihan's drug activity at the Property, Chananie was asked to characterize Thomas Counihan's "reputation in the community for drugs." Over Josephine Counihan's objection, the district court allowed Chananie to answer the question. Chananie testified that Thomas Counihan was "a big supplier in the area." In its summation, the government emphasized Thomas Counihan's reputation as "the biggest drug dealer in Southampton, North Sea and Sag Harbor."

Counihan argues that the admission of this evidence violated Fed.R.Evid. 404 and 405(a), and the government responds that it was admissible under rule 404(b). These rules are concerned, however, with the use of reputation evidence to prove character (rule 405), and the purposes for which character evidence may be used (rule 404). In this instance, Thomas Counihan's reputation, rather than his character, was at issue in order to establish his mother's knowledge of his drug dealing. Both rule 404 and rule 405 are inapplicable in such cases. *See* 22 Wright § 5235, at 369; *cf. United States v. Russo*, 708 F.2d 209, 214 (6th Cir.) (admitting evidence of defendant's bad reputation in extortion case as probative of victim's fear), *cert. denied*, 464 U.S. 993, 104 S.Ct. 487, 78 L.Ed.2d 682 (1983); *United States v. Tropiano*, 418 F.2d 1069, 1081 (2d Cir.1969) (same), *cert. denied*, 397 U.S. 1021, 90 S.Ct. 1262, 25 L.Ed.2d 530 (1970). We conclude that the district court did not abuse its broad discretion in admitting this evidence. *See United States v. Torres*, 901 F.2d 205, 234 (2d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990).

### C. *Instruction on Proof of Knowledge and Consent.*

 The district court instructed the jury as follows:

> The statute provides that the property of the claimant, Josephine Counihan, shall not be forfeited if she can prove by a preponderance of the evidence two things. A, she *did not have actual* knowledge of drug activity at the 890 Noyac Road premises *and* [emphasis added]; B, she did not consent to the illegal drug activity.[5]

Subsequent to the district court's instruction, this court decided *United States v. 141st St. Corp.*, in which we held that:

> a claimant may avoid forfeiture by establishing *either* that he had no knowledge of the narcotics activity *or*, if he had knowledge, that he did not consent to it.

911 F.2d at 878 (emphasis added); *see also* Lalit K. Loomba, Note, *The Innocent Owner Defense to Real Property Forfeiture under the Comprehensive Crime Control Act of 1984*, 58 Fordham L.Rev. 471, 478–86 (1989) (urging disjunctive construction of 21 U.S.C. § 881(a)(7)). In the event of a new trial, an instruction consonant with *141st Street Corp.* should be given.

### Conclusion

The judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

---

**5.** As noted *supra*, the district court prudently guarded against a contrary appellate ruling by submitting separate interrogatories concerning knowledge and consent to the jury.