### Michael COSENZA and Karen Cosenza, Plaintiffs,

v.

### UNITED STATES of America, Defendant.

### No. CV 93 0450(VVP).

United States District Court,
E.D. New York.

July 30, 1997.

**JUDGMENT**

POHORELSKY, United States Magistrate Judge.

A Findings of Fact and Conclusions of Law of Hon. Victor V. Pohorelsky, United States Magistrate Judge, having been filed on July 28, 1997, finding that plaintiff MI-CHAEL COSENZA has failed to prove by a preponderance of the evidence that the accident on January 29, 1991, was the proximate cause of any injuries to his back; that since co-plaintiff KAREN COSENZA's claims are derivative, dependent on a finding of liability by the defendant UNITED STATES OF AMERICA for her husband's injuries, they too must fail for want of proof; directing that judgment be entered in favor of the defendant UNITED STATES OF AMERICA; and denying plaintiffs' post-trial motions to amend the complaint; it is

ORDERED AND ADJUDGED that plaintiffs MICHAEL COSENZA and KAREN COSENZA take nothing of defendant UNITED STATES OF AMERICA; and that the complaint is hereby dismissed.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND DECISION ON PLAINTIFFS' POST–TRIAL MOTION

### FINDINGS OF FACT

The automobile accident from which this action arises occurred on January 29, 1991, at approximately 11:00 p.m., on West Street in the borough of Manhattan. At that time Supervisory Special Agent James Lyons of the Federal Bureau of Investigation was driving a Chevrolet Caprice. As he approached a traffic light which was red, he began braking but his foot slipped off the brake pedal. As a result he was unable to stop the Caprice before it hit a Jaguar XJ6 that was stopped at the red light.

The impact of the collision propelled the Jaguar, which was driven by Yehuda Michael, into a Honda Accord which was also stopped at the red light immediately in front of it. The driver of the Accord was Herbert Dorfman. With Dorfman in the Accord were two passengers, Therese Kreutzer and the plaintiff Michael Cosenza. Ms. Kreutzer was in the front passenger seat and Mr. Cosenza was in the rear passenger seat on the right side. Mr. Cosenza was wearing a seat belt with shoulder harness at the time of the accident.

Although the specific speed of the Caprice at the time of impact was not known, it was

traveling at less than 25 miles per hour because Lyons had been driving no more than 25 to 30 miles per hour when he began braking more than one hundred feet before impact. As a result of the collision between the Caprice and the Jaguar, the Caprice suffered damage to the front of the vehicle and the Jaguar suffered damage to the rear. Neither Lyons nor Michael were injured at all in the accident.

The secondary collision between the Jaguar and the Accord was far less substantial than the impact between the Caprice and the Jaguar. Neither Mr. Michael, the driver of the Jaguar, nor Mr. Dorfman, the driver of the Honda Accord, felt any impact between their respective vehicles. Mr. Dorfman's two passengers both said they felt some "moderate" or "medium" impact, but an immediate inspection of the two vehicles disclosed no damage whatsoever to the front of the Jaguar or the rear of the Accord. None of the passengers in the Dorfman vehicle complained of any injuries or pain whatsoever at the time of the accident, although the plaintiff, Mr. Cosenza, later described that he felt like something touched the left side of his back around the belt line at the time of impact.

Several days after the accident, Mr. Cosenza began to feel some tightening in his lower back which developed into soreness. On the sixth day after the accident, while on his way to work, Mr. Cosenza's leg apparently buckled and he had severe back pain that caused him to return home. The next day he visited Dr. Giles Scuderi, an orthopedist who had treated him for a previous injury to his right knee. Dr. Scuderi examined Mr. Cosenza, took X-rays of his lower lumbar back area, and prescribed some pain medication. Over the next six weeks Scuderi examined Mr. Cosenza again on several occasions and sent him to a radiologist for magnetic resonance imaging ("MRI") testing. On the basis of the radiological and other examinations, Scuderi concluded that Mr. Cosenza had disc herniations between the L3 and L4 vertebrae, between the L4 and L5 vertebrae, and between the L5 and S1 vertebrae, as well as a disc fragment in the left lateral recess between the L5 and S1 vertebrae. Dr. Scuderi concluded that these injuries were the result of "reflection extension" of the spine caused by the sudden jolt of the car accident based on the "acute" nature of the complaints of pain and the fact that Dr. Scuderi was unaware of, and had not previously treated Mr. Cosenza for, any back or neurological problems.

During the ensuing four and a half years, Mr. Cosenza was examined by various physicians and received treatment for back pain from various health care professionals although the symptoms of pain subsided at times with various therapies. In April of 1992, approximately sixteen months after the accident, Mr. Cosenza began experiencing difficulties in his right knee which Dr. Scuderi diagnosed as patella femoral syndrome. Some time later he also began experiencing pain in his left knee as well. In March of 1993, approximately twenty-six months after the accident, Mr. Cosenza's left knee "buckled" and he suffered a torn meniscus. Dr. Scuderi testified that the knee problems Mr. Cosenza suffered were also related to the motor vehicle accident, not through direct trauma, but because nerve responses caused by the herniations caused tightening of the leg muscles which in turn placed stress on the knees.

After May 1993, Mr. Cosenza left the care of Dr. Scuderi but continued to be examined and treated by other physicians. Ultimately, in August 1995, one of those physicians, Dr. Cammisa, performed surgery on Mr. Cosenza's back. The back surgery included a bilateral laminectomy and removal of an osteophyte at the L5–S1 vertebrae, a laminotomy and partial formanotomy at the L4–L5 vertebrae, and neurolysis at the S1 nerve root. Several weeks after the back surgery, Mr. Cosenza underwent arthroscopic knee surgery, performed by Dr. Allen, to repair a torn medial meniscus in his left knee.

Unbeknown to Dr. Scuderi, Mr. Cosenza had had substantial experience with back pain prior to the accident in this case. Since at least 1984, he had received treatment from chiropractors and an orthopedist for his complaints of lower back pain. In connection with that treatment, an orthopedist had taken x-rays of his back and he had used pain

medication prescribed for him. The pain was of sufficient intensity and duration that it caused him occasionally to miss several days of work at a time. Mr. Cosenza, however, could not remember the names of the chiropractor or the orthopedic surgeon who had treated him; their records of his pre-accident complaints of, and treatment for, back pain were therefore not made available to the court at trial. As confirmed by his wife, Mr. Cosenza's complaints of back pain continued during the six-month period immediately prior to the accident, although he apparently received no treatment for those complaints during that period of time.

Mr. Cosenza had also had knee problems before the accident. In 1988, he received treatment from Dr. Scuderi for clicking, snapping, and buckling episodes he experienced in his right knee. Ultimately, Dr. Scuderi performed surgery in October 1988 to repair a torn medial meniscus. The surgery disclosed that Mr. Cosenza was suffering degenerative changes in various structures in his right knee, and Dr. Scuderi concluded a year later that mild degenerative changes in that knee were likely to continue.

As noted above, various radiological studies of Mr. Cosenza's lower lumbar region were done shortly after the automobile accident, and then on several subsequent occasions in the ensuing years. These included x-rays, MRI's, myelograms and CT-scans. The radiological tests and studies were introduced in evidence by the defendant and analyzed by the defendant's expert, Dr. Rothman. Dr. Rothman is a board-certified diagnostic radiologist with a further board certification in the recently recognized sub-specialty of neuroradiology.

Dr. Rothman's testimony persuasively established that the radiological studies disclose clear evidence of longstanding degenerative disc disease that predated Mr. Cosenza's accident and continued to progress after the accident. His testimony was unrebutted on this point. Through the use of a shadow box, Dr. Rothman examined the various studies in chronological order in court, and described the progression of the disease in Mr. Cosenza by pointing out the changes that occurred over time to the various discs and explaining the reasons for the changes. Given his extensive experience in many years of practice, which includes radiological studies of several thousand cases of acute disc disorders, and the obvious command of the subject area he exhibited during his testimony, Dr. Rothman's conclusions about Mr. Cosenza's degenerative disc disease are credited in their entirety by the court.

Dr. Rothman also provided factually detailed and persuasive testimony concerning the development of herniations and other anomalies as a result of degeneration, as well as the types of trauma necessary to cause an acute herniation as distinguished from a herniation that results from degenerative disc disease. Through degenerative disc disease, which affects virtually everyone as part of the natural aging process, the discs between spinal vertebrae dry out and lose their elasticity. They tend to flatten out and bulge, and in time they may herniate without any traumatic injury. When herniation occurs, the jelly-like material inside the disc extrudes through cracks in the harder outer membrane. Not all herniations result in pain, however. Pain occurs only when the extruded material compresses nerves in the spinal cord. Herniation and compression of the nerves need not occur simultaneously, and indeed a herniated disc may never result in pain, because the extruded material may dissipate or retract into the disc before compression occurs. On the other had, a disc that has degenerated to the point of herniation could well be asymptomatic until an event as inconsequential as a sneeze, bending to tie a shoelace, or bumping into someone on the street would cause compression and the onset of pain.

To herniate a healthy disc, on the other hand, rather severe trauma, *i.e.* hyperflexion or hyperextension, of the spine is required. Such trauma is quite unlikely to be experienced in the lumbar region of the back if a person is wearing a shoulder harness because the harness holds the chest in place and prevents excessive movement that would affect that lower region of the back. Impact violent enough to cause such trauma would likely cause injury of some type to the unre-

strained cervical spine. More significantly, the onset of pain would almost certainly be immediate, radiating along the paths of the nerves whose roots are impinged by the herniation. The absence of such pain in Mr. Cosenza for several days after the accident was a significant indication to Dr. Rothman that the accident did not cause acute herniation to any disc or compression of the nerves.

■ Dr. Rothman's conclusions from his review of the radiological studies conflicted to some extent with Dr. Scuderi's concerning the extent of Mr. Cosenza's disc problems. He concluded that the radiological studies as of March 18, 1991 disclosed at most one herniation, at the L4–L5 level, and only disc bulges at the L3–L4 and L5–S1 levels. He then tracked these anomalies through the later studies and explained how some became worse while others improved. Because Dr. Rothman has much greater experience in reading radiological studies, and because he had the benefit of reviewing later studies that Dr. Scuderi had not reviewed, the court credits Dr. Rothman's conclusions over Dr. Scuderi's conclusions concerning the nature and extent of the physical conditions affecting the plaintiff's lumbosacral spine.

Dr. Rothman also explained persuasively the significance of the osteophyte which was removed during the surgical procedures performed by Dr. Cammisa four and half years after the accident. An osteophyte, also known as a bone spur, is a stage of degenerative disc disease. It is caused by micro-irritation of the bone in the spinal column which occurs because of the diminished ability of degenerated discs to provide cushioning. The presence of the osteophyte in Mr. Cosenza thus confirms the existence of chronic degenerative disc disease, a finding which Dr. Cammisa himself made in his operative report following the surgery.

The testimony of Dr. Edward Crane, an expert in the field of orthopedic surgery, further established several crucial facts concerning Mr. Cosenza's injuries. He confirmed that an acute herniation caused by an automobile accident would ordinarily result in immediate onset of severe back pain, including an inability to come to an upright position and to move about. He confirmed that the disc narrowing experienced by Mr. Cosenza, as displayed by x-rays taken shortly after the accident, established a longstanding degenerative disc disease, not an acute injury. Finally, he found no relationship between Mr. Cosenza's back pain and the tearing of the medial meniscus in his left knee. The causal connection suggested by Dr. Scuderi, specifically contracture or tightness of the muscles in the back, was not confirmed by the examinations conducted by Dr. Crane or by any other examiner including Mr. Cosenza's physical therapist. Rather, Dr. Crane concluded that the tear in the left knee, being virtually identical to the tear in Mr. Cosenza's right knee years earlier, was consistent with a genetic predisposition for such injuries which Dr. Crane has often observed in patients whom he has treated for identical tears in both knees.

## CONCLUSIONS OF LAW

■ The plaintiff has failed to prove by a preponderance of the evidence that the accident on January 29, 1991 was the proximate cause of any injuries to his back and knees. The relatively light impact was insufficient to cause herniation and the absence of pain in the immediate post-accident time period confirms that no acute herniation or compression of nerves in the back occurred as a result of the accident. Rather, the plaintiff undoubtedly suffered chronic degenerative disc disease whose onset occurred well before the accident. The fact that he had experienced bouts of back pain for years prior to the accident serves to confirm that disease. Thus the onset of further back pain after the accident was but part of the continuum of symptoms to be expected from his degenerative disc disease. To the extent the pain may have become more acute after the accident, that was just as likely to be attributable to any of a wide range of normal daily occurrences that jarred or stressed the plaintiff's back, rather than to the accident. That the plaintiff began to experience back pain again several days after the accident is insufficient to establish a causal connection between the two events in light of the numerous other possibilities and explanations for the onset of the plaintiff's pain.

Since the plaintiff's theory for the origin of his knee injuries, including the torn meniscus in his left knee, is based entirely on the pain in his back, and since the court has determined that the plaintiff has failed to prove a causal connection between the accident and his back pain, the plaintiff has likewise failed to prove a causal connection between the accident and his knee injuries.

As to the claims of the co-plaintiff, Karen Cosenza, since they are derivative claims dependent on a finding of liability by the defendant for her husband's injuries, they too must fail for want of proof.

## THE PLAINTIFFS' POST-TRIAL MOTION

After the submission of the post-trial briefs in this matter, the plaintiffs moved to amend their pleadings to conform to the proof at trial to add alternative theories of recovery for aggravation of a pre-existing injury and for activation of a latent disease or condition. The defendant has opposed the motion on the grounds of prejudice.

Rule 15(b) of the Federal Rules of Civil Procedure permit amendment to conform to the evidence when "issues not raised by the pleadings are tried by express or implied consent of the parties." Fed.R.Civ.P. 15(b). The central question in deciding such a motion,

> is whether the new issues were tried by the parties' express or implied consent and whether the defendant "would be prejudiced by the implied amendment, i.e., whether he had a fair opportunity to defend and whether he could offer any additional evidence if the case were to be retried on a different theory."

*Royal Amer. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1017 (2d Cir.1989) (quoting *Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1086 (2d Cir.1977)); *accord United States v. Certain Real Property*, 945 F.2d 1252, 1257 (2d Cir.1991).

As to the question of consent, the defendant's statement of defenses in the joint pretrial order expressly advises the court and the plaintiffs that their failure to plead ag-

gravation of a pre-existing condition meant they had no right to claim or recover on such theories at trial. The court must conclude, then, that the defendant did not expressly consent to trial of those issues.

Whether the defendant impliedly consented to trial of those issues may be, but is not required to be, inferred from failure to object to the introduction of evidence relevant to the unpleaded issue. *See, e.g., United States v. Certain Real Property*, 945 F.2d at 1257. Ultimately, the issue of implied consent depends on whether the party as to whom such consent is to be implied recognized that the issue had entered the case at trial. *Id.* (citations omitted).

In this case, there is nothing from which the court can infer that the defendant impliedly consented to the new theories that the plaintiffs now seek to inject. The plaintiffs introduced no evidence whatsoever on those theories. Their entire theory of the case was that the onset of Mr. Cosenza's back problems was solely because of the accident. There was never any acknowledgment of previous degenerative disc disease, and there was no evidence offered concerning the extent to which previous problems were exacerbated by the accident. Moreover, had the plaintiffs acknowledged such previous disease, the defendant would have had the opportunity to introduce its own evidence on the extent of such exacerbation and to prove that any award of damages should be discounted to account for injuries that would have been suffered even without the accident. *See, e.g., Maurer v. United States*, 668 F.2d 98, 100 (2d Cir.1981).

For the foregoing reasons, the court is compelled to deny the post-trial motion to amend. The court notes, however, that because of the plaintiffs' failure to offer evidence in support of the new theories, the court perceives the same absence of proof of proximate cause that undermines the plaintiffs' case as set forth in the court's findings of fact and conclusions of law. Put another way, whether the plaintiffs' theory of recovery is based on new injury or aggravation of pre-existing injury, they have failed to establish a causal connection between either of

those types of injuries and the accident from which they allege the injuries arose.

## CONCLUSION

For the foregoing reasons, judgment is to be entered for the defendant.

**SO ORDERED.**